IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KARIEM YOONUS, #311-517, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-06-2457 |
| CORRECTIONAL MEDICAL SERVICES, | * | |
| Defendants | * | |

******

## MEMORANDUM OPINION

This civil rights case filed by Plaintiff, a state inmate, asserts a civil rights claim for deliberate indifference to a serious medical need. Paper No. 1. Counsel for Defendant has filed a dispositive motion. Paper No. 14. Plaintiff has filed a response. Paper No. 19. No hearing is needed to resolve the Eighth Amendment issue presented. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion to Dismiss and/or for Summary Judgment, construed as a summary judgment motion, shall be granted.

### 1. Background

In his Complaint, Plaintiff states that he first informed medical personnel of groin and abdominal pain on August 1, 2005.[1] He states that the pain was allowed to persist until August 23,

---

[1] In Plaintiff's opposition he takes issue with Defendant's contention that he did not begin to complain of abdominal pain until September, 2005. He has attached to his opposition a number of sick call slips and medical records, the majority of which were provided to the Court by Defendant. Included in these records are sick call slips preceding the date specified in the complaint indicating he began to suffer abdominal pain as early as the spring of 2004. These slips are dated May 29, 2004, October 3 and 9, 2004, October 21, 2004, March 9, 2005, and April 4, 2005. Each time he complained, Plaintiff was evaluated by a nurse. No physical manifestations of his complaints were noted and he was educated about diet and body mechanics. Paper No. 19, Attachments.

1

2006 when he was seen by Dr. Fairbanks. Paper No. 1. He also states that he was denied medical care for an injury to his hand. *Id.*

Plaintiff complained of abdominal pain on September 11, 2005, when he submitted a sick call slip stating that he was suffering from sharp pain on his right side when he moved. Paper No. 14, Ex. B., p. 1. Plaintiff was evaluated by Nurse Reckley on September 12, 2005. Upon examination, Plaintiff complained that he felt bloated and that his right side hurt all the time. Nurse Reckley observed that Plaintiff had positive bowel sounds in all quadrants of his abdomen and that his abdomen was soft. Plaintiff reported that he had a bowel movement the previous day. Plaintiff was advised to increase fluids and was given muscle rub and Motrin for pain relief. *Id.*

Plaintiff was examined by Nurse Ndiaye on September 29, 2005, during his regularly scheduled appointment in the Chronic Care clinic. Plaintiff did not complain of any concerns regarding his abdomen. *Id.,* p. 2.

Plaintiff did not again complain of abdominal pain until January 17, 2006, when he filed a sick call slip complaining of pain in his lower stomach. He filed a second sick call slip on January 25, 2006, complaining of pain in the left side of his stomach and lower back and pain while urinating. Plaintiff was evaluated on January 27, 2006, by Nurse Hollar, who found distended abdomen, dull to percussion, and a decrease in bowel sounds. Nurse Hollar educated Plaintiff on ways to relieve abdominal pain and advised him to return to the dispensary if necessary. *Id.*, p. 5-10.

One month later, on February 23, 2006, Plaintiff submitted a sick call slip complaining of left side abdominal pain that had started the night before. Plaintiff was examined by Nurse Robinson, who noted that Plaintiff's abdomen was soft, non-distended and non-tender and that he had increased bowel sounds. Nurse Robinson determined that Plaintiff suffered from gas and gave

him simethicone for relief. She also instructed Plaintiff to increase his fluid intake and educated him about his diet. Plaintiff was instructed to return to the dispensary if necessary. *Id.*, Ex. 11.

Plaintiff's next sick call slip was submitted on March 19, 2006, complaining of pain in the abdomen and navel. He stated the pain was not caused by gas. Plaintiff was examined by Nurse Robinson, who noted that the abdomen was soft and slightly distended but not tender, with bowel sounds in all four quadrants. Nurse Robinson scheduled Plaintiff for evaluation by the physician assistant. *Id.*, p. 12. Plaintiff was seen by Physician Assistant Barr on March 27, 2006. P.A Barr noted that Plaintiff complained of right-sided groin pain and burning in the area of a prior hernia repair. The examination revealed decreased bowel sounds in the left lower quadrant and the upper quadrants of Plaintiff's abdomen and tenderness in the right upper quadrant. Plaintiff's abdomen was soft, but no hernia or enlarged abdominal organs were noted. Barr referred Plaintiff to the endocrinology clinic due to elevated blood sugar. *Id.*, p. 13.

Plaintiff was evaluated by a physician on April 10, 2006, during his regularly scheduled Chronic Care Clinic appointment. Dr. Ndiaye noted that Plaintiff complained of pain with urination and stated that it was difficult to walk because of pain in the scrotum and groin. Plaintiff denied any problem with his bowels. Dr. Ndiaye determined that Plaintiff suffered either right epididymitis or orchitis, conditions affecting the scrotum. Dr. Ndiaye prescribed an antibiotic for Plaintiff's condition and advised him to follow-up in three weeks. *Id*., p. 14-15, p. 43-44.

Plaintiff next filed a sick call slip dated May 15, 2006, complaining of continued pain and stating that he had not been seen by the physician after the "medicine she gave me was gone." *Id*. p. 16.

Plaintiff was examined by Barr on May 17, 2006, in response to complaints of pain in the right lower leg and sharp pain in the groin into the abdomen that occurred with movement. Barr noted that Plaintiff had mild tenderness over his groin area, but there was no evidence of a hernia. Plaintiff was given Elavil for leg pain and an x-ray was ordered. X-rays taken on May 23, 2006, did not reveal any abnormalities. *Id*., p. 17, 36.

Plaintiff submitted another sick call slip dated May 21, 2006, complaining of pain in the left scrotum. *Id*., p. 19. Plaintiff was evaluated by Dr. Ndiaye on May 24, 2006, in the Medical/Surgical Clinic. Plaintiff stated that he suffered from left groin and testicular pain which increased when he walked or urinated. Dr. Ndiaye noted that Plaintiff complained of pain despite completing weeks of antibiotic treatment. Examination revealed that Plaintiff has fullness in the left groin area and tenderness of the spermatic cord and left testicle. Dr. Ndiaye referred Plaintiff for an ultrasound of his testes. The referral was approved on June 5, 2006, and the ultrasound was performed on June 21, 2006. *Id.*, p. 19-20, 37.

Plaintiff again submitted sick call slips on July 4 and 7, 2006, complaining of pain in the groin and abdomen. Plaintiff was seen by Dr. Fairbanks on July 11, 2006, in response to complaints of right upper quadrant abdomen pain that radiated to his back and groin. *Id.,* p. 23-26. Examination revealed that the right upper quadrant of the abdomen was tender and full. No rebound pain or guarding of his abdomen was noted. Dr. Fairbanks ordered an x-ray of abdomen and bloodwork to check liver function. *Id*., p. 21-22, 25, 37. The x-rays were taken on July 17, 2006, and showed moderate fecal retention, but were otherwise unremarkable. *Id.*, p. 26.

Plaintiff submitted sick call slips on July 19, July 26, July 29, and August 9, 2006, complaining of abdominal and groin pain and asking to see the doctor. Plaintiff was seen by medical

4

personnel as a result of each sick call slip and was advised that he was scheduled for the next available appointment in the medical/surgical clinic. *Id*. pp. 27-30.

Plaintiff was examined by Dr. Fairbanks in the Medical/Surgical Clinic on August 23, 2006 who noted that the ultrasounds taken earlier revealed: (1) a borderline varicocele (a mass of enlarged veins that forms in the spermatic cord) in each testicle; (2) likely epididymitis on the left testicle; and (3) a 4 mm epidymal cyst on the left testicle. Dr. Fairbanks ordered another course of antibiotics for eight weeks to treat Plaintiff's condition. *Id.*, p. 31, 37.

Plaintiff submitted sick call slips on August 27 and 29, 2006, but was not seen as he was already scheduled to be seen for follow-up in the Chronic Care Clinic. *Id.*, p. 32-33. Plaintiff was evaluated by Dr. Chopra on October 2, 2006, complaining of a burning sensation in his right palm. The examination revealed a callous on the palm and a full range of motion of the hand. Dr. Chopra ordered that Plaintiff's potassium level be checked in one month, and Plaintiff's cardiac medication was renewed. Dr. Chopra determined that no further treatment was required at that time. Plaintiff did not complain of abdominal pain during this visit. *Id.*, Ex. A, Ex. B., p. 34, 51.

On October 14, 2006, Plaintiff submitted a sick call slip complaining of right-sided abdominal pain, which he thought could be appendicitis. Plaintiff was examined by the nurse who noted pain on palpation of the right lower quadrant of the abdomen with bowel sounds. Plaintiff reported having a bowel movement the day before. Plaintiff was scheduled for follow-up in the Medical/Surgical Clinic. *Id*., p. 45.

Dr. Chopra examined Plaintiff in the Medical/Surgical Clinic on November 2, 2006. Plaintiff complained of right lower quadrant and right groin pain. Dr. Chopra determined that Plaintiff

continued to suffer from epididymitis. He discontinued the previously-prescribed antibiotic in favor of a different antibiotic. *Id*., p. 46, 52.

Plaintiff submitted a sick call slip on November 27 and December 4, 2006, complaining of pain in his neck and scrotum. Plaintiff was evaluated by Nurse Robinson on December 7, 2006. She noted that Plaintiff had completed his antibiotics but still had the same problem. Plaintiff was scheduled for the Medical/Surgical Clinic for follow-up. *Id*., pp. 47-49.

Dr. Chopra examined Plaintiff on December 13, 2006. Dr. Chopra noted that Plaintiff had bilateral varicocele and epidymal cysts. Dr. Chopra ordered a urology consult for Plaintiff for the next available appointment with an off-site urologist. *Id.*, p. 50, 53.

**2. Standard of Review**

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson,* 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

### 3. Analysis

**A.     Respondeat Superior**

Plaintiff's allegation against Correctional Medical Services, Inc. (CMS), the private prison health care provider, is based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Accordingly, Plaintiff's complaint against Correctional Medical Services shall be dismissed.

**B.     Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383, 390 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Records before the Court demonstrate that Defendants have not acted with indifference to Plaintiff's medical needs. When Plaintiff began his complaints of abdominal pain, he was treated for gas and encouraged to drink fluids and watch his diet. He was evaluated for hernias, diabetes, and appendicitis. Plaintiff was ultimately diagnosed with epidymitis and prescribed antibiotics to treat that condition. When Plaintiff did not respond to the antibiotic treatment he was referred for a sonogram and two additional regimens of antibiotics were prescribed. These conservative

treatments did not cure Plaintiff's condition and he was referred to an outside urologist.[2] Plaintiff simply disagrees with the medical and professional judgment of his care providers. Such disagreements with a course of treatment do not provide the framework for a federal civil rights complaint but rather, at most, state a claim for negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

Likewise, Plaintiff's disagreement with the length of time that lapsed before he was referred to an outside urologist does not state a cognizable constitutional claim. S*ee Peterson v. Davis*, 551 F.Supp. 137, 146 (D.Md. 1982). The Court simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

### 4. Conclusion

For all the foregoing reasons, Defendant's Motion for Summary Judgment shall be granted. A separate Order follows.


Date: 5/9/07                                                                 /s/
                                                         ALEXANDER WILLIAMS, JR., on behalf of
                                                                  PETER J. MESSITTE
                                                            UNITED STATES DISTRICT JUDGE

---

[2] Defendants shall submit a report concerning the urologist's findings, including information concerning additional treatment that may be indicated.

9